## D'Alessandro et al. v. Berk et al.

*Gabriel Berk* and *Robert M. Bernstein,* for plaintiffs.

*Joseph N. Smith, Glenn A. Troutman,* and *Victor William Richman,* for defendants.

GORDON, JR., P. J., April 22, 1943.—This is an action by a minor and his parents to recover damages for personal injuries suffered by the minor in a collision be-

tween two trucks which occurred in the early morning of April 10, 1941, on City Line Avenue between 51st and 52nd Streets, in the City of Philadelphia. Defendants Clarence Barfield and Abe Fisher, copartners trading as Wissahickon Dairies, were the owners of the truck in which plaintiff was riding, and defendants Berk and Coyle were, respectively, the owner and operator of the other truck involved in the accident. On the merits of the case with respect to the accident itself the jury rendered verdicts for plaintiffs aggregating $12,-795 against the Wissahickon Dairies, and in favor of defendants as to Berk and Coyle. This eliminated the latter defendants as parties to the suit, leaving the partners Barfield and Fisher as the only defendants in the case, who filed the motions for a new trial and for judgment non obstante veredicto which are now before us for disposition. The motion for a new trial was not seriously pressed at the argument, as there is no doubt, from the evidence presented, of the negligence of defendants' driver, and the seriousness of the injuries plaintiff sustained fully supports the amount of the verdict rendered by the jury. The rule for a new trial is, therefore, discharged.

This leaves for our consideration only the motion for judgment non obstante veredicto, which is based upon the contention that plaintiffs' uncontradicted evidence established the status of the minor at the time of the accident to have been that of a statutory employe of defendants, and hence that they are not liable to plaintiffs in trespass, but only under section 203 of The Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended by section 203 of The Pennsylvania Workmen's Compensation Act of June 21, 1939, P. L. 520. The statute of limitations has already barred any claims by the injured plaintiff under The Workmen's Compensation Act, and hence he will be without redress for his injuries if we uphold defendants' contention that he was their statutory employe under that act.

Such a result, due solely to plaintiffs' mistaken choice of the remedy they have pursued, is manifestly impertinent to the legal point in dispute, and cannot be permitted to influence our decision of the question before us. It challenges, however, a most careful consideration of the contentions of the parties in the light of a thorough canvassing of the state of the law on the subject as disclosed by the decisions of our appellate courts to date, especially as it may be assumed that plaintiffs' election to sue in trespass was influenced, and to some extent at least induced, by a study of all the appellate decisions dealing with the section in question.

Defendants offered no testimony as to the status of plaintiff as a statutory employe, and rested their case in this respect entirely upon the evidence presented by plaintiffs, which established the controlling facts to be as follows: At the time of the accident defendants were engaged in the retail sale and delivery of milk over various routes to private homes in and around the City of Philadelphia, and in this business operated a fleet of trucks, one of their truck drivers being a certain Michael Palko, the operator of the truck involved in the accident. It was the frequent practice of the drivers to hire young boys from the neighborhood of defendants' loading depot from which the trucks started on the routes to assist them in making their early morning deliveries. This hiring was by the drivers themselves, on their own behalf, and was not in any way authorized or directed by defendants, although the practice may well have been known to, and tolerated, by them. It furnished an opportunity for the boys to earn extra pocket money from time to time, and also enabled the drivers to procure substantial help in the performance of their duties by a comparatively small expenditure out of their own wages. The minor plaintiff met Palko on the evening before the accident, and offered to help him in making his deliveries that night. Palko accepted the

offer, and directed plaintiff to meet him at the depot early the following morning. They did not then, or at any time before the accident, agree upon the compensation to be paid the boy for his services, although it was tacitly understood that he would be paid the usual wage of a dollar or a dollar and a half for the night's work. Plaintiff met Palko as agreed upon, and assisted him and other employes of defendant in loading the delivery truck preparatory to going out on the route. The loading was supervised by Abe Fisher, one of the defendant partners, who thus knew plaintiff was helping Palko, and accepted for his firm the benefit of plaintiff's labor. When the loading was completed, plaintiff got into the cab of the truck in the presence of Fisher, and drove off with Palko. There is nothing in these facts to charge Fisher with knowledge that plaintiff had been hired by Palko to help him on the route, for they are equally consistent with an intention on the part of plaintiff merely to accept a ride from Palko to an undisclosed destination. The circumstances are sufficient, however, to charge defendants with knowledge of plaintiff's presence on their truck, and the failure of Fisher to exercise his authority to prevent it gave the partnership's approval and consent thereto, thus placing him in the position of an invitee in the vehicle for the careful operation of which they were responsible.

These facts, coupled with the proof of Palko's negligence, amply support the jury's verdict, unless they also fix plaintiff's status at the time as that of a statutory employe of defendants under section 203(b) of The Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended by section 203 of The Pennsylvania Workmen's Compensation Act of June 21, 1939, P. L. 520. It will be noted that, except for helping in the preliminary loading of the truck on defendants' premises, plaintiff was hired by Palko to assist him in delivering milk to customers, a work performed en-

tirely away from their premises, and that the accident happened on the public highway, after the truck had left the loading depot. This raises the question whether, notwithstanding the accident occurred away from the premises and in connection with work which plaintiff was not hired to perform on them, he was a so-called "statutory employe" of the defendants, within the meaning of the act, merely because he had already performed on the premises another part of the work for which he had been hired. In 1931 the Superior Court held, in the case of De Nardo et ux. v. Seven Baker Brothers, 102 Pa. Superior Ct. 347, that a workman injured in these circumstances was such a statutory employe, and that decision would have been conclusive upon us were it not for a subsequent decision of the Supreme Court in Rich Hill Coal Co. et al. v. Bashore, 334 Pa. 449. In the latter case that court denied the constitutional power of the legislature to impose compensational liability upon employers for injuries occurring away from premises under their control to persons not hired by them, but by their employes or subcontractors. This would seem to be in sharp conflict with the earlier decision of the Superior Court, and requires a careful reëxamination of the whole question.

Section 203 of the original Workmen's Compensation Act of 1915, which was in force until 1937, was amended by the legislature in that year. In 1938 the Supreme Court held the amendment unconstitutional in the Bashore case for reasons which will be discussed hereafter, and the Act of 1939 now in force was passed to reëact the language of the section as it had stood from 1915 to 1937, which reads as follows:

"An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or

contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe."

This section imposes upon employers compensational liability to injured workmen who are not, in fact, employes of the employer, and to whom, except for the provisions of the act, the employers would owe only a common-law liability for negligence in the event of accident. In doing this the legislature was dealing with three groups of persons classified upon the basis of their interrelationship, namely: (1) Employers; (2) their employes; and (3) workmen who are hired, not by employers, but by their employes, to perform part of the employers' business upon which the employes are engaged. A member of this latter group occupies the same relation to the employer that a contractor or subcontractor occupies to an owner, and hence may be conveniently designated as a subemploye. Although generally referred to in the decisions as a "statutory employe", the act does not declare him to be an employe of the original employer, but merely makes the employer "liable" to him "in the same manner and to the same extent as to his own employee." This may seem a narrow distinction, but it is not without substance, for the Superior Court's decision would appear to have been based upon the assumption that the act creates a relationship of employer and employe which continues during the entire hiring, rather than merely imposes a liability in certain specified circumstances. The act identifies and defines the membership of this subemploye group in whose favor it operates as "a laborer or an assistant" who has permissively entered an employer's premises after being "hired by an employe . . . *for the performance upon such premises* of a part of the employer's regular business entrusted to such employe. . . ." Considered from the standpoint of the work for which he is engaged, a subemploye might con-

ceivably be hired for any one of three kinds of work: (1) He might be hired for the performance of work exclusively on the employer's premises; or (2) for the performance of work exclusively away from such premises; or (3) for the performance of work partly on and partly off the same. There can be no question that, if the hiring falls within the first of these categories, the person hired is a statutory employe of the employer: Hauger v. Walker Co. et al., 277 Pa. 506; Qualp v. James Stewart Co., Inc., et al., 266 Pa. 502; while, if it falls in the second category, he is not: McDonald v. Levinson Steel Co., 302 Pa. 287 (1930); Gallivan, to use, v. Wark, 288 Pa. 443 (1927). When, however, he is hired to perform work both on and off the premises, the question arises whether the employer is liable only for accidents occurring in connection with work performed on the premises, or for those occurring off the premises as well.

It would seem to us that, as a problem of inferring the legislative intent from the language used, the logical answer to this question would require our holding that the act operates to render the employer liable to the subemploye only for accidents happening on the premises of the former. By the very terms of the act the sole liability imposed by it is upon an employer who permits entry on his premises of a person hired *"for the performance upon such premises"* of a part of the hiring employe's regular work. A hiring for the performance of work away from such premises is not even suggested, in any part of the section, as a basis for postulating liability: Inclusio unius est exclusio alterius. Had the legislature intended to impose it upon an employer regardless of where the accident happens, one would expect it to have said so forthrightly and with greater certainty, as it did in the amendatory Act of June 4, 1937, P. L. 1552, in which an employer is made liable to a subemploye "whether said injury occurred

upon premises occupied or controlled by the employer or not."

However that may be, the Superior Court, in interpreting the language under consideration, held in De Nardo et ux. v. Seven Baker Brothers, supra, a case singularly on all fours with the one here under consideration, that (p. 352) :

"The status of the boy as a statutory employe of defendant when he was helping Hendzel load the truck on the premises did not terminate when he left the premises and was working off the premises when he sustained the injuries from which he died. He was still in the course of his employment. It was only necessary that he should perform part of his work on the premises in order to bring him within the above mentioned sections of the statute." The rule here announced was followed by the Superior Court in the later case of Aurand v. Universal Carloading & Distributing Co. et al., 131 Pa. Superior Ct. 502. Although that decision was handed down in 1938, after the passage of the amendatory Act of 1937, it dealt with a case arising in 1932. In it Forrest Aurand, who was employed as a helper by an independent trucker named Carberry, was asphyxiated, with Carberry, in the cab of the latter's truck which was transporting merchandise from New York City to Pittsburgh under a contract with defendant. Aurand's widow subsequently filed a petition for compensation, basing her claim upon the contention that her husband had been a statutory employe of defendant, and the Workmen's Compensation Board awarded compensation to her. That award, which was affirmed by the lower court, was reversed on appeal, the Superior Court holding that the evidence before the board was insufficient to sustain its finding that a part of Aurand's work had been performed upon defendant's premises, and, hence, that Aurand was not a statutory employe of defendant, and his widow's only right against defendant was in an action for negli-

gence. Neither of these cases was appealed to the Supreme Court, although a supersedeas was asked for and refused in the Aurand case. The refusal, however, did not necessarily import its acceptance and approval of the ground upon which the Superior Court based its reversal of the lower court, for the result (i. e., the holding that the deceased was not a statutory employe of the defendant) would have been the same whether it flowed from the absence of proof that he had ever been on defendant's premises, or from the fact that the accident did not happen on them.

The opinion in the De Nardo case merely states the principle there announced, without disclosing the reasoning by which the Superior Court reached its decision. This is to be regretted, especially as earlier decisions of the Supreme Court would seem to point to a different conclusion. For example, in McDonald v. Levinson Steel Co., supra, the Supreme Court reversed a judgment non obstante veredicto granted by the lower court in an action in trespass, and entered judgment for plaintiff on the verdict, saying (p. 294) :

"To create the relation of statutory employer under section 203 of the act, all of the following elements essential to a statutory employer's liability must be present: (1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under the control of such employer. (3) A subcontract made by such employer. (4) Part of the employer's regular business entrusted to such subcontractor. (5) An employee of such subcontractor."

Again, in Gallivan, to use, v. Wark Co., supra, in which a verdict for plaintiff in trespass was affirmed, Mr. Justice Kephart, in discussing section 203 of The Workmen's Compensation Act, said (p. 449) :

"By this section the legislature took hold of independent groups (employers on one hand and employees on the other) which had never borne the relation of em-

ployer and employee as to each other, and created that relation for the purposes of the act. A person thus termed employer does not pay, cannot discharge, in fact has absolutely no direct relation to such persons, nor they to him. This is the most drastic interference with individual rights to be found in the act. The relation is of purely statutory origin, and as it forces liability upon parties who are not in privity of contract, and causes one of them (hereinafter referred to as a statutory employer) to be liable for accidents for which he may in no way be responsible, its effect must receive close consideration.

"The intent and purpose of the act is to secure compensation to employees who are injured while engaged at their regular occupations, as specified, without requiring negligence of the employer to appear. Section 203 has to do with different masters and different servants engaged in a common enterprise, whose combined efforts have one definite object or accomplishment in view. It cannot, however, be given effect beyond what is absolutely necessary to carry out the definitely expressed purpose of the legislature; it cannot be made to cover, by implication, situations not within the intent and scope of the Compensation Act.

"The section applies to the principal contractor; the persons who are made his employees must be hired by one standing in contractual relation with him; *they must be working on the premises* doing something that is a part of the principal contractor's employment or contract. The section makes no effort to relieve the contractual employer, or the employer by hiring, but it adds to the principal contractor's general liability." (Italics supplied.)

The precise point decided in the De Nardo case did not arise in either of these cases, for there is no suggestion that plaintiffs in them had performed any part of their work on defendants' premises. They do, how-

ever, strongly indicate an interpretative view of section 203 that requires the accident to have happened on premises owned by or under the control of the employer before the act becomes operative. While the De Nardo case, therefore, settled the law to be that it was only necessary that a part of the subemploye's work be performed on the employer's premises to make the former a statutory employe of the latter, any doubt that might have existed upon that question was definitely removed by the Act of 1937, heretofore referred to, which amended section 203 to read:

"An employer who permits a sub-contractor or employe to engage another, in whole or in part, in services furthering the employer's regular business entrusted to such employe or sub-contractor, shall be liable to the employe so engaged in the same manner and to the same extent as to his own employe, whether said injury occurred upon premises occupied or controlled by the employer or not, provided only that the injury occurred in the course of employment."

The principal effect of this amendment is to conform the written law to the decision of the Superior Court in the De Nardo case, and thereby to set at rest any academic question that might be raised from the decisions referred to. In 1938 the constitutionality of the 1937 amendment was raised before the Supreme Court in Rich Hill Coal Co. et al. v. Bashore, supra, which held it unconstitutional, because it imposed compensational liability upon employers for accidents happening off their property to persons hired by others. In a lucid and forceful analysis of the subject Mr. Justice Maxey, speaking for the Supreme Court, said (p. 463):

"Act No. 323 is also challenged because it fails to measure up to the constitutional standard above mentioned, to wit, the injuries giving rise to liabilities under an avowedly 'Workmen's Compensation Act,'

as the act under review, with its amendments, is, must be those of employees of the compensator and must arise 'in the course of employment.' Section 203 of this act imposes liability on the primary employer for injuries to the employees of subcontractors 'engaged in services furthering the employer's regular business entrusted to such employee or subcontractor . . . whether said injury [to the subcontractor's employee] occurred upon premises occupied or controlled by the employer or not, provided only that the injury occurred in the course of employment.' Section 203 of the Workmen's Compensation Act of *1915* imposed on the general employer liability for injuries to those 'laborers or an assistant hired by an employee or contractor for the performance *upon such premises* [italics supplied] of a part of the employer's regular business entrusted to such employee or contractor.' In *Qualp v. James Stewart Co.*, 266 Pa. 502, 109 A. 780, this court held the applicable section of the Workmen's Compensation Act of 1915 related only to employees who were 'upon premises under his [the employer's] control.' In *Gallivan v. Wark Co.*, 288 Pa. 443, 449, 136 A. 223, this court in construing section 203 of Article II of the 1915 Workmen's Compensation Act referred to this section as 'the most drastic interference with individual rights to be found in the act,' and that it 'forced liability upon parties who are not in privity of contract.' It is clear that section 203 of the Act No. 323 of 1937 goes far beyond 'the drastic interference' of the old act. Under the old act, the 'employee' of the subcontractor could not recover from the principal contractor unless he was injured on the premises of the latter or under his control. This propinquity between the primary employer and the laborer made it possible for the employer to supervise the conditions of the laborer's employment and afforded some logical basis for holding that the former was liable to the

latter for any personal injuries received on premises under the former's control. Such a holding marked the utmost limit this court can go in giving the statuses of 'employee' and 'employer,' respectively, to two persons who in fact have no such contractual relation to each other. Now we are asked to hold that an employee of a subcontractor 'B' who anywhere on premises no matter how remote from and how far beyond the control of, contractor, 'A', is injured, can recover from 'A' in an action at law for such injury received by that employee in the course of his employment by subcontractor 'B'. This imposes responsibility upon an employer without giving him reciprocal authority. We cannot judicially hold that when the people of this Commonwealth authorized the General Assembly to enact 'laws requiring the payment by employers, or employers and employees jointly, of reasonable compensation for injuries to employees arising in the course of their employment and for occupational diseases of employees,' they intended to confer or did confer upon the General Assembly an authority to enact a law making an employer liable to the employee of a subcontractor employer on premises remote from the first employer's premises and over which he did not have the slightest control."

In the light of this reasoning, it is difficult to see how the decisions of the Superior Court in the De Nardo and Aurand cases can any longer be considered as settling the law of this subject. It not only grounds the unconstitutionality of the amendment squarely upon the circumstance that it fixes upon employers liability for accidents occurring away from premises under their control, but it also points out that the section which it amended limits liability to accidents on such premises, and thereby inferentially indicates that any other interpretation would bring the section within the ban of the Constitution. It is no answer to

this conclusion to argue that the Supreme Court was dealing with the case of a contractor whose employes never went near the property of defendant, and that it was never intended to deprive of compensation a subemploye practically all of whose work is performed on the employer's premises, but who happens to be injured when he leave the premises for a few moments on business incident to his employment. If the decision of the Supreme Court is sound, an assumption that we are no more at liberty to challenge than the definite pronouncement of the Superior Court to the contrary, the argument is merely in terrorem, and confirms the adage that hard cases tend to make bad law. It might just as readily be argued that it would work an equally great injustice to impose upon an employer during the entire course of a long employment compensational liability to a subemploye who, as in the present case, enters the employers' premises on a single occasion and to perform only a small fraction of his total employment. If the criterion of constitutionality is that laid down in the Bashore case, the fact that a few isolated cases may present the appearance of hardship is no reason for giving a construction to a statute which would constitutionally nullify it. This is especially so when its language is sufficiently lacking in certainty to admit of an interpretation that will not be in conflict with the fundamental law: See article IV, sec. 52(3), of the Statutory Construction Act of May 28, 1937, P. L. 1019.

Being thus confronted by apparently conflicting decisions by our appellate courts, we have no choice but to follow that which is both last in time and supreme in point of ultimate authority. We, therefore, hold that the accident in this case having occurred on a public highway, and not on premises belonging to or under the control of defendants, the minor plaintiff was not at the time a statutory employe of defendants

within the meaning of section 203 of The Workmen's Compensation Act, and hence that the present action was properly brought in trespass for damages for the injuries suffered by him through the negligence of defendants' agent in the operation of their motor vehicle.

Accordingly, the rule for a new trial is discharged, and the motion for judgment non obstante veredicto is overruled.